Argued March 27, reversed and remanded for a new trial June 20,
reconsideration denied July 26, petition for review denied
September 6, 1978

STATE OF OREGON, *Respondent,*

*v.*

JACK EDWARD PRUITT, JR., *Appellant.*

(Nos. 77-0760, 77-0761, 77-0762, 77-0763 & 77-0764,
CA 8593)

(Cases consolidated)

580 P2d 201

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Brian R. Barnes, Assistant District Attorney, Lane County, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Lane County.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction, by jury, of robbery, sodomy, kidnapping and two counts of rape, all involving the same victim. The court sentenced defendant to imprisonment for 20 years on each count. The sentences on kidnapping, sodomy and two counts of rape were concurrent and the sentence on the robbery charge was made consecutive to the other four sentences. Defendant makes three assignments of error. Since we hold the case must be reversed on the basis of the first assignment of error it is unnecessary to discuss defendant's remaining contentions.

The victim is a young woman who lived in an apartment with two roommates. On the day of the crimes she had gone to the laundry room to retrieve her laundry. The defendant accosted her, produced a knife and told her to be quiet or he would use it. The defendant then took the victim up to her apartment. He went with her throughout the apartment and then bound her hands and placed her on a bed, after removing her wristwatch. He searched the apartment and removed jewelry, money and other items of value, which he placed in the hallway. During his search of the apartment for valuables, he asked the victim if she had any prescription drugs or drugs of any kind. When she answered in the negative he searched the medicine cabinet in the bathroom, and then asked again if she had any drugs. He gagged her, removed some of her clothing and committed oral sodomy on her and then had intercourse with her for approximately five minutes. This was the basis of the first count of rape. Following this act of intercourse he left the bedroom and looked around the apartment. He then returned and had intercourse with the victim a second time. This was the basis of the second rape count.

Following the second act of intercourse, he collected the property he found in the apartment, preparatory to leaving, but left most of the property and fled when the victim's roommate returned. The entire episode

from the first encounter until defendant left the apartment, comprised approximately 35 minutes.

The victim identified the defendant as her assailant and two other witnesses testified they saw him in or near the apartment building during the approximate time the crimes were committed. Defendant denied he was the assailant and filed a notice of alibi. He presented evidence that during the time the crimes were committed he was watching television at his mother's home with his younger brother.

■ Defendant had been examined by a psychiatrist apparently preparatory to an affirmative defense based on mental disease or defect. This defense was abandoned at trial. The state, however, called the examining psychiatrist in its case in chief who testified, over objection, that the defendant had told him of prior drug usage. The specific drugs mentioned by the defendant were LSD, amphetamines and marijuana. Admission of this testimony is the basis of the first assignment of error. The state contends it is relevant to show a motive for the robbery since the defendant indicated during the incident he was looking for drugs. The state relies on *State v. Guerrero*, 243 Or 616, 415 P2d 28 (1966), and *State v. Howell*, 3 Or App 484, 474 P2d 778 (1970).

In *Guerrero* the defendant was apprehended attempting to break into a drug store. The police found narcotic paraphernalia on his person and the state introduced it in evidence. The Supreme Court held the evidence, though prejudicial, established a compelling motive for defendant's attempt to illegally enter a drug store. In *Howell* we held evidence that defendant was a narcotic user was relevant to show motivation for participation in a narcotics-seeking crime.

The apparent rationale of these cases is that a person addicted to drugs has a need to acquire them and thus a motive to steal narcotics. The testimony of the psychiatrist was to the effect the defendant had

used amphetamines and LSD in the past but had not used these drugs recently. He told the psychiatrist his only recent drug use was marijuana but he had not used this substance for approximately seven months prior to the interview. The clear implication is that the use of LSD and amphetamines was sometime prior to seven months. There was no evidence from which the jury could conclude that the defendant had an addiction to these drugs. Inferring a motive to steal drugs in this situation is tenuous and the evidence had negligible relevance.

Balanced against this negligible relevance is the substantial prejudice that results from evidence that a defendant has illegally used drugs. Although use of marijuana possibly invokes little prejudice in contemporary society, *see State v. Hockings*, 29 Or App 139, 562 P2d 587, *rev den* (1977), *cert den* — US — (1978), the same cannot be said of the illegal use of amphetamines and LSD. We conclude the probative value of the challenged testimony is outweighed by its prejudicial impact. It was error to admit the evidence. *State v. Manrique*, 271 Or 201, 531 P2d 239 (1975).

The state argues if it was error to admit the evidence the error was harmless. In *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973), the Supreme Court set forth two requirements for affirmance despite error: (1) that there was substantial and convincing evidence of guilt; and (2) that the error committed was very unlikely to have changed the result of the trial.

Defendant denied being the assailant and presented evidence, including his own testimony, that he was elsewhere when the crimes were committed. Evidence connecting him with the crime was the eyewitness identification of the victim and two other persons who stated they saw defendant in or near the apartment building at the time the crimes were committed. In addition some items of clothing taken

from defendant's apartment by the police were identified by the victim as similar to the clothing worn by her attacker. The credibility of the defendant, his witnesses and the identification witnesses for the state was a critical issue.

Credibility depends, in large measure, on observing the witness's demeanor during his testimony, but may be adversely affected by evidence respecting the witness's character. Determination of credibility, based on all the factors germane to believing or not believing a witness, is for the jury. The jury should make this determination free from the inadmissible evidence which has an adverse impact on the defendant's character. In deciding if the conviction should be affirmed despite the error, we do not try the case de novo to determine if the defendant was proven guilty absent the challenged evidence; to do so would effectively deny the defendant a right to a jury trial on issues of fact, particularly assessment of his alibi defense. We are not convinced the erroneously admitted evidence did not have an effect on the outcome of the trial.

Reversed and remanded for new trial.