Argued and submitted October 27, 2017, reversed and remanded
October 2, 2019

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HUGO ALEXIS ZALDANA-MENDOZA,
*Defendant-Appellant.*

### Washington County Circuit Court
### C151359CR; A160974

450 P3d 983

Defendant appeals from a judgment of conviction for burglary, sexual abuse, and unlawful sexual penetration. Defendant assigns error to the trial court's exclusion of defendant's testimony that defendant and the alleged victim had had consensual sex in the days before the charged incident. The trial court excluded that testimony under OEC 412, concluding that defendant's testimony was not credible. Defendant argues that the trial court's ruling to exclude his testimony violated his right to a jury trial, right to present a complete defense, and right to confrontation under the Oregon Constitution and the United States Constitution. *Held*: The trial court's decision to exclude the evidence was an impermissible credibility determination that violated defendant's right to a jury trial under Article I, section 11, of the Oregon Constitution. Without reaching defendant's other constitutional arguments, the trial court's decision is reversed, and the case is remanded to the trial court for further proceedings under OEC 412 and to determine whether a new trial is necessary or appropriate.

Reversed and remanded.

Suzanne Upton, Judge.

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

SHORR, J.

Reversed and remanded.

**SHORR, J.**

Defendant appeals from a judgment of conviction for burglary, ORS 164.225, sexual abuse, ORS 163.427, and unlawful sexual penetration, ORS 163.411. Defendant argues that the trial court erred when it applied OEC 412, Oregon's rape shield statute, to exclude defendant's testimony that defendant and the alleged victim A had had consensual sex in the days before the alleged assault.[1] The court excluded that testimony after concluding, following an *in camera* hearing, that it did not find defendant's version of events believable. Defendant contends that that decision constituted an impermissible preliminary credibility determination that violated his right to a jury trial, right to present a complete defense, and right to confrontation under the Oregon Constitution and the United States Constitution. As we explain below, we reverse because we conclude that the trial court's decision to exclude the evidence was an impermissible credibility determination that violated defendant's right to a jury trial under Article I, section 11, of the Oregon Constitution. Because we reverse the trial court's decision to exclude defendant's evidence on that basis, we do not reach defendant's other constitutional arguments for excluding that evidence.

## I.   FACTS AND PROCEDURAL HISTORY

We provide the following background as context for understanding the evidentiary issue that was before the trial court. Defendant and A had lived in the same apartment building. The state alleged that, on June 1, 2015, defendant unlawfully entered A's apartment, forcibly subjected A to sexual contact and penetration with his finger, and attempted to rape A. The state charged defendant with burglary, sexual abuse, unlawful sexual penetration, and attempted rape.

---

[1] We address the substance of defendant's first assignment of error only. Defendant's second assignment of error—that the trial court erred in denying defendant's motion to suppress based on an alleged violation of his *Miranda* rights—we reject without further written discussion. After the initial briefing in this case, defendant filed a supplemental brief assigning error to the trial court's instruction to the jury that it could reach a nonunanimous verdict. We also reject that assignment of error on the merits without further written discussion.

A.   *The Pretrial OEC 412 Hearing*

Before trial, defendant moved to introduce evidence that he and A had had consensual sex on May 27, 2015, less than a week before the charged incident. Although evidence of a complainant's past sexual behavior is presumptively inadmissible under Oregon's rape shield statute, OEC 412(2), that statute provides three exceptions. Such evidence may be admissible if it relates to the motive or bias of the complainant, is necessary to rebut scientific or medical evidence offered by the state, or is otherwise constitutionally required to be admitted. OEC 412(2)(b).[2]

A defendant who wishes to introduce evidence under one of the exceptions enumerated in OEC 412(2)(b) must make a motion accompanied by a written offer of proof. OEC 412(4)(a) - (b). Before a trial court admits or excludes evidence under OEC 412, it must conduct a three-step inquiry. *State v. Muyingo*, 171 Or App 218, 224, 15 P3d 83 (2000), *rev den*, 332 Or 431 (2001). First, if the evidence relates to the alleged victim's past sexual behavior and is offered in the form of reputation or opinion evidence, the court must not admit the evidence.[3] *Id*. Second, if the evidence is offered in another form, the court must consider whether it can admit the evidence under one of the three exceptions in OEC 412(2)(b). If the court determines that no exception applies, the court must also exclude the evidence. *Id*. Third, if it appears that one or more of the exceptions may apply, the court must hold an *in camera* hearing to determine whether to admit the evidence. OEC 412(4)(b). At the hearing, "the parties may call witnesses, including the alleged victim, and offer relevant evidence." *Id*. If the relevancy of the evidence that the defendant seeks to admit "depends upon the fulfillment of a condition of fact, the court * * * shall accept evidence on the issue of whether the condition of fact is fulfilled and shall determine the issue." *Id*. Following the hearing, the court will determine if the evidence is relevant and the "probative value of the evidence outweighs the danger

---

[2] OEC 412 is codified at ORS 40.210.

[3] In the trial court and on appeal, the parties do not dispute that defendant's proffered testimony is his evidence of A's past sexual behavior and was not offered as opinion or reputation evidence.

of unfair prejudice," and admit it if so.[4] OEC 412(4)(c); *see also Muyingo*, 171 Or App at 224 (describing the three-step inquiry).

In this case, defendant contended that the evidence was admissible under the exceptions in OEC 412(2)(b)(A) (relating to motive or bias of the alleged victim) and OEC 412(2)(b)(C) (evidence that is constitutionally required to be admitted). As to the first exception, defendant argued that the prior consensual sexual encounter provided A with a motive to be dishonest about whether any sexual contact between herself and defendant—including the charged incident—was consensual, because A had an interest in hiding that encounter to protect her relationship with her boyfriend. As to the second exception, defendant argued that the evidence was constitutionally required to be admitted for several reasons, including his constitutional right to confront A and contradict her testimony that she was a stranger to defendant before the night of the charged assault. In his written materials in support of his motion to offer such evidence, defendant cited Article I, section 11, and the Sixth and Fourteenth Amendments to the United States Constitution.

The trial court held a hearing to determine whether that evidence was admissible, as required by OEC 412 (4)(b). At the hearing, defendant testified that he had interacted with A around the apartment complex and had gone to her apartment once to tell her that her car, which was parked on the street below defendant's apartment, had been ticketed. He asked if A wanted to go out with him for his birthday, and A agreed, but when he went to her apartment later that night no one answered when he knocked on the door. Defendant left a note on A's door calling her a "cutie"

---

[4] If the trial court determines that the evidence is "constitutionally required to be admitted," the OEC 412(4)(c) balancing test is inapplicable, because the court lacks the authority to exclude such evidence. Laird C. Kirkpatrick, *Oregon Evidence* § 412.03[6], 312 (6th ed 2013). The OEC 412(4)(c) balancing test is stated and weighed differently from the balancing test under OEC 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." Under the OEC 412(4)(c) balancing test, if the probative value and prejudicial effect are equally balanced, the evidence will not be admitted. Kirkpatrick, *Oregon Evidence* § 412.03[6] at 312. Under the OEC 403 balancing test, that evidence will be admitted. *Id.*

and reminding her to move her car to avoid another ticket. Defendant testified that he regularly complimented A on her appearance when he saw her around the apartment complex, they would flirt, and that she would laugh and talk in response. Defendant then testified that, on May 27, less than week before the charged incident on June 1, he and A had had consensual sex in his apartment. He described having seen A in the hallway, grabbing her by the hand, and proceeding to engage in consensual contact in the hallway, and later consensual sex inside his apartment. Defendant testified that he and A did not interact again between the earlier consensual encounter and the charged incident.

A also testified at the hearing. Her testimony contradicted defendant's testimony. A testified that, when defendant first asked her to go out with him for his birthday, she declined. Defendant knocked on A's door multiple times that night until, eventually, A's roommate's boyfriend answered the door and told defendant that A had a boyfriend and defendant was not welcome at the apartment. A and defendant occasionally walked past each other in the apartment complex after that point but never interacted with one another. A testified that she had never been in defendant's apartment and had not had any sexual relations with defendant prior to the charged incident when defendant broke into her apartment.

In addition, two other witnesses for the state—A's boyfriend at the time of the charged incident, J, and A's mother, T—corroborated A's testimony. J testified that he and A were in a monogamous relationship during the events at issue in this case. A had told him before defendant attacked her in her apartment that a man in her apartment complex was bothering her by leaving her notes and knocking on her door. While A "didn't make a huge deal out of it," it "kind of weirded her out." T similarly testified that A and J were in a monogamous relationship, that A complained that another man in the apartment complex was bothering her, and that T never saw A express any interest in defendant.

Defendant went on to argue that evidence of the consensual sexual encounter in his apartment was admissible because it was relevant to A's motive for accusing defendant

of attempting to rape her and was constitutionally required to be admitted. In defendant's view, A and J were in a monogamous relationship and "an outside of that relationship sexual contact with someone would give [A] a motive to be dishonest about anything that happened between her and [defendant] at the time."

At the hearing on defendant's motion, defendant expanded on the constitutional arguments that he had cursorily raised in his motion and supporting memorandum. Defendant raised arguments relating to his constitutional rights to (1) have a jury decide issues of credibility, (2) present a complete defense, (3) due process, and (4) confront witnesses. Defendant contended:

> "And so, Judge, my primary argument is that this information—I'm having trouble making words right now—*is constitutionally required to be admitted.*
>
> "This is a case where [A] is saying that she didn't consent to the activity that took place in her apartment on June 1st.
>
> "It's a case where [defendant] is saying that she did consent to the activity in her apartment on June 1st.
>
> "Not allowing him to admit this particular prior incident of May 27th would be a violation of his ability to present a complete defense.
>
> "*Now certainly the credibility of that issue is something for the jury to decide.* They can weigh the testimony provided by [defendant] and by [A] and make a decision as to the incident on May 27th, as well as the incident on June 1st.
>
> "But my argument is that it would be a violation of his due process rights not to allow him to testify about this prior sexual consensual contact. And frankly, [A]—I expected her to deny it before. *** And I expect her to deny it at trial. *And at that point, it should be a question for the factfinder to determine the nature of that incident, as well as the nature of the incident on June 1st.*"

(Emphases added.)

Following defendant's argument, the trial court denied defendant's motion to admit evidence relating to

defendant's claimed prior consensual sexual contact with A on May 27:

> "You know, you've raised a variety of different things that I would definitely have to deal with if we got to that point. The constitutional issue of confrontation. That's out there like a bell to be determined whether it should be rung or not. The issue of what other kinds of relevance it could have.
>
> "*****
>
> "But ultimately, when I considered all of the defendant's testimony, it was clear to me that it can't meet preponderance.
>
> "First of all, he contradicted himself. *** [S]ome of the things he said were nonsensical. Some of them he was contradicted on. Some of them he contradicted himself on. And ultimately, I didn't believe him.
>
> "But when you take that and then say, 'Okay, well, it doesn't look like the defense is going to be able to meet the preponderance standard to be able to say is it more likely than not that's true,' I definitely couldn't say it's more likely than not that's true. And my tendency, after considering everything he said, is to believe that it did not and that I could not rely on him.
>
> "But definitely, then, after I hear from [A], who her demeanor, which is a telling sign of credibility of any witness, and the things that she described that happened, the way that happened, and the things that did not happen made it crystal clear that she was describing the nature of their relationship up and to—or their lack of relationship—up and to the events of June 1st. I completely believe that.
>
> "*****
>
> "So under [OEC] 412, you can't get it in. And so, then, because of that, I can't make those findings.
>
> "The other issues, which I'm used to thinking of as the ones that take *** precedence, I don't even go there because I don't have the ability to make those further analyses. Not only constitutionality of confrontation, but also the various ways that it *** could be offered for in addition to the statements of the defendant."

In sum, the court concluded that it would not admit defendant's testimony that he had had a prior consensual sexual encounter with A on May 27, because the court found that defendant was not credible in claiming such an encounter occurred and A and some other witnesses were credible in denying any such encounter.

After the trial court ruled, defendant asked to make a further record:

> "But I do want to build a record and indicate that it would also be relevant to his confrontation of her saying that she had essentially never met him and didn't have a relationship with him at all.

> "And so, his—or maybe not confrontation. But I think it's also a due process right that he be allowed to admit testimony that contradicts her testimony that he was essentially a stranger to her when he entered the apartment on June 1st. So I wanted to add that information."

B.  *The Evidence at the Trial*

The case proceeded to trial. The state presented the following evidence. Early on the morning of June 1, 2015, defendant climbed up a downspout pipe to A's second-floor balcony and entered A's apartment through a sliding glass door. A was asleep in her bed with her three-year-old son. A awoke to find defendant in her bedroom. Defendant got on top of A and held down her arms and legs. He then attempted to unbutton his own pants, and he penetrated A's vagina with his finger. A struggled and told defendant to leave. At some point, A's son woke up, and A was able to convince defendant to allow her to take her son to use the bathroom. When she returned, defendant appeared upset, apologized, and asked A not to tell anyone what he had done. A was ultimately able to convince defendant to leave. She then called her boyfriend and the police.

A further testified that, at the time of the charged incident, she was in an exclusive relationship with another man. She stated that defendant had asked her out on one occasion, that she rejected his advances, and that afterward she never flirted or interacted with him, and in fact avoided him. A further testified that, during the charged incident,

she actively resisted defendant and repeatedly told him to leave, but he used physical force to restrain and sexually assault her.

In addition, there was evidence at trial that defendant initially denied to the police that he had had any physical contact with A on the morning of June 1. He later told the police he had made a "mistake" and it was a "big deal." The police later found defendant's DNA on A and A's DNA on defendant, and the parties stipulated to those facts.

At trial, defendant further testified that A had agreed that defendant could "knock on her apartment door" on his birthday and had flirted with him whenever she saw him around the apartment complex. Regarding the charged incident, defendant admitted that it was wrong to climb into A's bedroom without her permission but explained that he did so because he "wanted to surprise her" and "express [his] feelings toward her." According to defendant's testimony, when he entered A's room, she woke up, let him get into bed with her, and allowed him to touch her legs and vagina. Contrary to what he had earlier told the police, defendant admitted to having sexual contact with A, but stated that the contact was consensual. Defendant testified that A never resisted him and he never used physical force against her. Before defendant left, A told him to keep their encounter a secret, and defendant asked her not to tell her boyfriend. According to defendant, A was "normal" and "looked happy" up until he was preparing to leave, when she unexpectedly "yelled" at him to "get out of the apartment." In accordance with the trial court's prior evidentiary ruling, defendant did not testify about his claimed earlier consensual sexual encounter with A in his apartment.

Ultimately, the jury acquitted defendant of attempted rape but convicted him of burglary, sexual abuse, and unlawful sexual penetration. This appeal followed.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred when it excluded evidence of the alleged prior consensual sexual encounter between defendant and A based solely on a credibility determination. Defendant contends that the

court's decision to exclude the evidence based on a credibility determination violated, among other constitutional rights, defendant's right to a jury trial on a fact issue.[5] In response, the state contends that defendant failed to preserve in the trial court his argument that his constitutional right to a jury trial was violated. On the merits, the state argues that the court did not violate defendant's constitutional right to a jury trial because it was permissibly deciding a preliminary issue of fact prior to trial.

We first address the preservation issue. "Generally, we will not consider an argument on appeal that has not been raised in the trial court." *State v. Walsh*, 288 Or App 278, 282, 406 P3d 123 (2017), *rev den*, 362 Or 545, *cert den*, ___ US ___, 139 S Ct 158 (2018). We require parties to raise and preserve arguments prior to appeal "to allow the trial court to consider a contention and correct or avoid any error, to allow the opposing party an opportunity to respond to a contention, and to foster full development of the record." *State v. Lulay*, 290 Or App 282, 289, 414 P3d 903 (2018). "[W]hen determining if an issue has been adequately preserved for review, the appropriate focus is whether a party has given opponents and the trial court enough information to be able to understand the contention and to fairly respond to it." *Walsh*, 288 Or App at 282 (internal quotation marks omitted).

The state contends that defendant did not argue before the trial court that the court's preliminary finding on the credibility of the evidence "violated his right to a jury trial." Although the issue is close, we disagree. It is true that defendant did not specifically mention a constitutional right to a jury trial at the precise time that he stated that credibility was an issue for the jury to decide. However, his statement was made within the context of an overall argument that was focused on his constitutional right to have a jury

---

[5] As noted, defendant argued to the trial court that the evidence of his claimed past sexual contact with A should be admitted under OEC 412 because it was relevant to her motive or bias to lie about the encounter to protect her relationship with her boyfriend and was constitutionally required to be admitted. OEC 412(2)(b)(A), (C). As we discuss further below, we do not reach defendant's arguments relating to A's purported motive or bias because we do not need to reach them. We also do not reach all of defendant's constitutional arguments for the same reason.

decide the facts. In his Motion to Offer Evidence Pursuant to OEC 412, defendant argued that his evidence was constitutionally required to be admitted and cited Article I, section 11, which recognizes, among other rights, an accused's "right to public trial by an impartial jury" and the right "to meet the witnesses face to face." Defendant also cited the Sixth Amendment, which similarly provides that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury" and that "the accused shall enjoy the right *** to be confronted with the witnesses against him." Defendant did not specify in his motion or the accompanying memorandum whether he was raising the right to a jury trial, the right of confrontation, or perhaps both or some other right under Article I, section 11, or the Sixth Amendment. Defendant also argued in his motion and memorandum that he had a right under OEC 412 to present the evidence of the alleged prior sexual encounter because it purportedly related to the victim's motives or biases.

The argument at the hearing was slightly more focused. Defendant began by arguing that his "primary argument is that this information *** is constitutionally required to be admitted." Defendant followed shortly after with his contention that "the credibility of [the claimed prior sexual encounter] is something for the jury to decide," and "it should be a question for the factfinder to determine the nature of that incident." Although the court framed its oral ruling generally within the context of OEC 412 and stated that it was not reaching issues like "constitutionality of confrontation," defendant continued to make a record in support of his constitutional arguments that defendant had a right to admit the testimony even if the judge did not find defendant's testimony credible.

Although the issue is close, we conclude that, in the context of defendant's written motion and the overall argument at hearing, defendant adequately preserved his argument. Defendant had previously cited Article I, section 11, in his motion. Defendant focused his oral argument on his "primary argument" that he had a constitutional right to present the testimony of the claimed prior sexual encounter. Defendant then specifically contended in the context of that

argument that "the credibility of that issue is something for the jury to decide." Defendant continued to focus on his constitutional rights to present his testimony to the jury even after the court ruled. Defendant gave the opposing party and the court an opportunity to respond to and address his argument on his constitutional right to have a jury to make credibility decisions. There was also a full factual record and a sufficiently developed legal record for the trial court to consider. In sum, the issue is preserved for our consideration, because defendant gave the state and the trial court "enough information to be able to understand the contention and to fairly respond to it." *Walsh*, 288 Or App at 282.

Turning to the merits, we first note that this court has not previously considered whether, in the context of an OEC 412 hearing, a criminal defendant has a right under Article I, section 11, to have the jury decide whether particular evidence is credible. There is also no controlling law from the Oregon Supreme Court. As a matter of statutory construction, we have previously held that *former* OEC 412(3)(b) (1993), which is identical to current OEC 412 (4)(b), provides that the court "may determine facts out of the presence of the jury. That task may include determining whether a witness is credible." *State v. Cervantes*, 130 Or App 147, 151, 881 P2d 151 (1994) (citation omitted). The rule provided then:

> "Notwithstanding [OEC 104(2)], if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers * * * shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue."

Or Laws 1993, ch 301, § 1. There have been minor changes to the text of that rule, but those changes are not significant to our analysis. *See* OEC 412(4)(b). In *Cervantes*, we examined that text in the context of the text of OEC 412 generally and concluded that it provided that the court, and not the jury, is to determine the credibility of the evidence offered by the accused regarding the victim's past sexual behavior. 130 Or App at 151. The court may determine whether evidence is credible outside the presence of the jury and exclude

it. *Id*.[6] We expressly did not reach the constitutional argument, because the defendant "did not make a constitutional argument in the trial court, and we refuse[d] to consider it." *Id*. In this case, because defendant did make a constitutional argument in the trial court, we will consider it.

Before doing so, we note that the history of the Federal Rules of Evidence provides some instructive background to this issue. Until 1994, FRE 412(c) had nearly identical language to OEC 412(4)(b). In 1994, however, the following text was struck from the federal rule:

> "Notwithstanding subdivision (b) of Rule 104, if the relevancy of the evidence which the accused seeks to offer in trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled *and shall determine such issue*."

FRE 412 Advisory Committee Notes to subdivision c (emphasis added). The advisory committee noted that the deleted language

> "[o]n its face *** would appear to authorize a trial judge to exclude evidence of past sexual conduct between alleged victim and an accused or a defendant in a civil case based upon the judge's belief that such past acts did not occur. Such an authorization raises questions of invasion of the right to a jury trial under the Sixth and Seventh

---

[6] OEC 104(2) provides that a court shall admit evidence whose relevancy depends on the fulfillment of a condition of fact "upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." OEC 412(4)(b) provides that "notwithstanding" OEC 104(2), the court at an *in camera* hearing "shall accept evidence on the issue of whether the condition of fact is fulfilled and shall determine the issue."

We note that, in *Cervantes*, whether the victim had had sexual relations with another person soon before the assault was framed as an issue of conditional relevancy. 130 Or App at 150. We recognize that the issue in this case is not one of true conditional relevancy. Here, the relevancy of the proffered evidence does not depend on the fulfillment of a conditional fact in the way that "conditional relevancy" is generally understood. *See State v. McNeely*, 330 Or 457, 462 n 5, 8 P3d 212 (2000) (stating that "[c]onditional relevancy means a situation where one fact is relevant only if another fact is proven"). Defendant offered evidence of a claimed past sexual relationship with A to prove that fact alone and to provide some context for his later conduct toward A. In any event, as we later explain, a trial court may not constitutionally exclude evidence of a victim's past sexual behavior solely because the court does not find that evidence credible.

Amendments. *See* 1 Saltzburg & Martin, *Federal Rules of Evidence Manual* 396-97 (5th ed 1990)."

*Id*.

At least one federal appellate court has grappled with the import of the change to FRE 412 in the context of a defendant's right to a jury trial under the United States Constitution. In *United States v. Platero*, 72 F3d 806 (10th Cir), *cert den*, 514 US 1041 (1995), the defendant was accused of using his private security car to pull over a car that was driven by Laughlin and included a passenger, Francis. *Id*. at 807-08. The government alleged that the defendant had removed Francis from the pulled-over car and sexually assaulted her before returning her to her car. *Id*. at 808. The defendant's defense was that he and Francis had had consensual sex and that Francis had lied about the defendant sexually assaulting her to protect her romantic relationship with Laughlin. *Id*.

The defendant moved under FRE 412(b)(1) to introduce evidence of Francis's alleged past sexual relationship with Laughlin. The district court mistakenly applied the earlier version of FRE 412, which provided that the trial court "shall determine" whether conditions of fact have been fulfilled, despite the fact that the new version was then in effect. *See id*. at 811-12. At the pretrial FRE 412 hearing, the district court, based on its own credibility determinations, found that Francis and Laughlin had not had a romantic relationship at the time of the alleged sexual assault. The district court, therefore, prohibited the defendant from offering that evidence at trial. *Id*. at 809.

On appeal, the Tenth Circuit Court of Appeals reversed and concluded that the district court's pretrial determination of the credibility issues violated the defendant's rights to trial by jury and to confrontation provided by the Sixth Amendment. *Id*. at 816. The court relied on United States Supreme Court case law to conclude that "the trial judge's function is to determine *only* the presence of sufficient evidence to support a finding by the jury." *Id*. at 814 (emphasis in original; internal quotation marks omitted). That law compelled the conclusion that, "where there is such a question of relevancy depending on a condition of

fact, like the relationship issue here, that question goes to the *jury* for a determination, not to the judge." *Id*. (emphasis in original).

The court noted that, on remand, the district court should apply the revised FRE 412(c), which no longer authorized the court to determine issues relating to the fulfillment of a conditional fact, such as credibility determinations as to whether the conditional fact was believable. Rather, the court should apply FRE 104 to the task of resolving conditional facts:

> "However, now, with the change in the law by the omission of the Rule 412(c)(2) provision that the court determine whether the condition precedent to relevancy has been fulfilled, issues of relevancy-conditioned-on-fact should be considered under [FRE] 104(b). Under Rule 104(b), the court determines only whether the evidence is sufficient to support a jury finding that the condition has been met."

*Id*. at 815.

Following the change to FRE 412(c), a number of experts on evidence have stated that the change was necessary to preserve a defendant's right to a jury trial. *See id*. at 812 (stating that, "if the Trial Judge disbelieves the defendant [and his offer of evidence of his past sexual activities with the alleged victim] and concludes that no such activity took place, the Trial Judge should rule that the evidence of the prior sexual activities is not to be admitted [under Former Rule 412(c)]. To us, this presents a clear violation of the right to jury trial." (quoting 1 Saltzburg & Martin, *Federal Rules of Evidence Manual* at 396)); Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 4:80, 290 (4th ed 2013) (noting that, under the new Rule 412, "clearly the credibility of witnesses who would testify to sexual behavior is for the jury to consider and assess, and not for judges to determine in such hearings"); Jack B. Weinstein, *Weinstein's Federal Evidence* § 412.05[2] (2d ed 1997) ("The defendant's right to a jury trial requires the court to refrain from making any findings on credibility issues at this [revised Rule 412] hearing."). Thus, under the revised FRE 412 and the existing FRE 104, the federal courts do not decide whether proffered evidence of a victim's past sexual

conduct is credible, as that determination is for a jury, but only whether there is sufficient evidence from which a reasonable jury can find that the facts exist. *See, e.g.*, *Platero*, 72 F3d at 814. Of course, federal courts also decide, without the jury, other preliminary issues of admissibility, such as issues of relevancy, probative value, and substantial prejudice, among others, under FRE 401 and FRE 403.

With that background on FRE 412, we turn to an examination of the current OEC 412, which has not been amended similarly to the federal rule, and the question whether a trial court may constitutionally exclude a defendant's proffered evidence of a victim's past sexual conduct because the court does not find that evidence to be credible. Here, the trial court did precisely that, excluding defendant's testimony in which he claimed that he had had recent consensual sexual relations with the alleged victim, because the court did not believe defendant. As noted, we have held, as a matter of statutory construction, that a court acting under OEC 412 may exclude evidence of past sexual conduct of an alleged victim based upon the court's belief that such past conduct did not occur. *Cervantes*, 130 Or App at 151. But we have not reached the question whether, by authorizing that factfinding by the court, the text of OEC 412 violates a defendant's right to a jury trial on a fact issue under Article I, section 11. *Id*.

When interpreting a provision of the Oregon Constitution, we engage in a three-part analysis, "examining the text in its context, the historical circumstances of the adoption of that provision, and the case law that has construed it." *State v. Davis*, 350 Or 440, 446, 256 P3d 1075 (2011). We seek to "determine the meaning of the provision at issue most likely understood by those who adopted it, with the ultimate objective of identifying relevant underlying principles that may inform our application of the constitutional text to modern circumstances." *Couey v. Atkins*, 357 Or 460, 490-91, 355 P3d 866 (2015) (internal quotation marks omitted).

From its adoption, Article I, section 11, provided that, "[i]n all criminal prosecutions, the accused shall have the right to public trial by an impartial jury ***." Or Const,

Art I, § 11 (1857). That language remains to this day. The relevant text does not directly address the question presented here, whether a judge, rather than a jury, may decide a fact based on the judge's own credibility determination. However, Article I, section 16, originally provided, and still provides, in relevant part, that "[i]n all criminal cases whatever, the jury shall have the right to determine * * * the facts under the direction of the Court as to the law." Or Const, Art I, § 16 (1857). That constitutional provision certainly provides context and informs the extent of a criminal defendant's right to a jury trial, which right necessarily incorporates the jury's right to "determine" the facts as guided by the court's instructions on the law. In turn, the jury-trial right to have the jury "determine" the facts is in conflict with the provision of OEC 412 that the court "shall determine" certain facts at issue. OEC 412(4)(b).

Turning to the history of Article I, section 11, as noted, it was adopted as part of the original state constitution.

> "Its wording is identical to the wording of Article I, section 13 of the 1851 Indiana Constitution and is, consequently, presumed to have been based on that state's guarantee. It was adopted without amendment or debate."

*Davis*, 350 Or at 464 (internal citations omitted). In such instances where neither Oregon nor Indiana constitutional history provides meaningful guidance, our Supreme Court has looked to the historical context at the time, including a review of the preexisting legal traditions. *Id*. The right of a criminal defendant to have a jury decide the truth of the accusation against him dates back centuries to English law. Trial by jury requires that "the truth of every accusation, whether proferred in the shape of an indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of [the defendant's] equals and neighbors."[7] *Apprendi v. New Jersey*, 530 US 466, 477, 120 S Ct 2348, 147 L Ed 2d 435 (2000) (quoting 4 W. Blackstone, *Commentaries on the Law of England* 343 (1769)). Although the evidence here was not part of the "accusation" by the state, it was

---

[7] Under the current Oregon Constitution, a unanimous vote of the jury is not required in criminal trials except in cases of first-degree murder. Or Const, Art I (Amended), § 11.

offered by defendant as part of his defense to the state's accusations. The credibility of such evidence, whether as part of an accusation or defense, has traditionally and generally been a fact issue to be decided by a jury in a criminal case, if the evidence is otherwise admissible under the law, including under other evidence rules. *See State v. Pruitt*, 34 Or App 957, 962, 580 P2d 201 (1978) (noting that we do not review evidence *de novo* under a harmless-error analysis because to do so would effectively deny a defendant a right to a jury trial on issues of fact and that "credibility, based on all the factors germane to believing or not believing a witness, is for the jury").

We next turn to a consideration of the case law interpreting Article I, section 11. As we have noted, neither the Supreme Court nor our court has confronted when, if ever, Article I, section 11, may permit a court to reject an offer of evidence simply because it finds the evidence not credible. We have concluded that Article I, section 11, prohibits the state from using facts implicitly decided in an initial criminal case to trigger the doctrine of issue preclusion and thereby establish an element of a crime in a subsequent criminal case against the same defendant. *State v. Davis*, 265 Or App 179, 183, 335 P3d 1266 (2014). In so doing, we reaffirmed the longstanding constitutional principle that "[i]mplicit in both the state and federal right to a jury trial is the right to have a jury find all the elements of the charged offense beyond a reasonable doubt." *Id*. at 192; *see also* ORS 136.030 ("An issue of law shall be tried by the judge of the court and an issue of fact by a jury[.]"); ORS 44.370 ("Where the trial is by the jury, they are the exclusive judges of the credibility of the witness.").

Applying the text, context, and history of Article I, section 11's jury-trial right, we conclude that a court cannot reject an offer of evidence regarding the victim's alleged past sexual behavior *solely* because it finds that evidence not credible. To the extent that the text of OEC 412(4)(b) has previously been construed to allow for such credibility determinations by the trial court, that reading, while consistent with the rule itself, is inconsistent with Article I, section 11. Rather, that credibility determination is one for the jury if the evidence is otherwise admissible.

We pause to state the narrow basis of our holding and the limited basis for the trial court's ruling in this case. We conclude only that Article I, section 11, prohibits a trial court from rejecting a defendant's offer of evidence of a victim's past sexual conduct based *solely* on the court's determination that such evidence is not credible. That is what the trial court decided here and the only issue that the trial court decided. Of course, trial courts regularly decide preliminary issues of fact and some of those decisions necessarily require the court to weigh the evidence. In *State v. Carlson*, 311 Or 201, 208, 808 P2d 1002 (1991), the court held that preliminary questions of fact under OEC 104(1), which address competency, privilege, and other evidentiary admissibility issues, are decided by the judge based on a preponderance of the evidence standard in which the judge determines the credibility and weight of the evidence. Significantly, the court then noted that, when the issue is one of conditional relevancy under OEC 104(2), "the judge neither weighs credibility nor makes a finding that the party has proved the conditional fact by a preponderance of the evidence." *Id*. (internal quotation marks, brackets, and citation omitted). *See also* Kirkpatrick, *Oregon Evidence* § 104.04 at 59-60 (stating that, if evidence were kept from a jury "because the judge was not persuaded that it was authentic, even though there was sufficient evidence to support a jury finding of authenticity, the right to a jury trial would be infringed").[8] We are not reaching into the many other areas in which trial courts may regularly decide preliminary issues of fact, but decide this case only on the basis that the trial court could not deny the admission of defendant's testimony of a claimed prior consensual sexual encounter with A solely because the court did not believe that testimony.

Because the trial court excluded the evidence on the basis that the evidence was not credible, the court expressly did not reach other arguments concerning the admissibility of the evidence. Of course, there may be other reasons

___

[8] Under the terms of OEC 412(4)(b), OEC 104(2) does not apply to issues of conditional relevancy that arise under OEC 412. However, as we discuss above, it infringes on a defendant's right to a jury trial if evidence is rejected solely because a trial court concluded that the evidence was not credible.

why defendant's proffered testimony of a claimed prior sexual encounter with A may have been excluded by the court.

Along those lines, the state contends that we may nevertheless affirm, because any error was "harmless" for two reasons. First, the state contends that, "even if the court had assumed that the defendant's testimony was true, the evidence was not admissible under [OEC 412(2)(b)], because it did not relate 'to the motive or bias of the alleged victim' and was not 'otherwise constitutionally required to be admitted.'" That is, the state contends that, even if the trial court had assumed that the jury would find credible defendant's testimony that he had a prior sexual encounter with A, that evidence was still inadmissible under OEC 412 (2)(b), because defendant would not have been able to prove that the evidence fit into either of two exceptions—the evidence did not relate "to the motive or bias of the alleged victim" and was not "otherwise constitutionally required to be admitted." OEC 412(2)(b)(A), (C).

Although framed as a harmless-error argument, we understand the state's first "harmless-error" argument to be an alternative argument for affirmance. Essentially, the state contends that, even if the trial court erred in excluding the evidence because it found the evidence not credible, we still may affirm defendant's convictions on the alternative basis that the court would have been required to exclude the same evidence for the other reasons argued in the trial court. For the state to prevail on that argument, we would need to conclude that defendant could not meet *either* of the exceptions under OEC 412(2)(b)(A) and (C) that defendant raised below.

As we discuss below, the trial court declined to make findings relating to the evidence that it indicated that it otherwise would have made. As a result, the court also declined to engage in a discretionary balancing of the evidence's probative value against such considerations as its risk of unfair prejudice, harassment, and confusion, among other factors, that were central to the confrontation clause issues presented by defendant.

The trial court did not reach whether the evidence was constitutionally required to be admitted under the confrontation clause. It stated:

"You know, you've raised a variety of different things that I would definitely have to deal with if we got to that point. The constitutional issue of confrontation. That's out there like a bell to be determined whether it should be rung or not. The issue of what other kinds of relevance it could have.

"* * * * *

"So under [OEC] 412, you can't get it in [because the court found the evidence not credible]. And so, then, because of that, I can't make those findings.

"The other issues, which I'm used to thinking of as ones *** that take precedence, I don't even go there because I don't have the ability to make those further analyses. Not only constitutionality of confrontation, but also the various ways that it would, you know, that it could be offered for in addition to the statements of the defendant."

We understand the trial court to have stated that, but for its conclusion that the evidence was inadmissible because it was not credible, OEC 412(4), the court would have made "findings" relating to the evidence at the OEC 412 hearing that it otherwise did not. Those findings would have been significant to its further analysis of the OEC 412 issues that it never reached.

For instance, defendant argued that he had a right under Article I, section 11, to confront A with the claimed prior sexual encounter, but confrontation clause rights are subject to limitation when the trial court has concerns about harassment, prejudice, confusion of the issues, witness safety or interrogation that is repetitive or only marginally relevant, and the court must ultimately balance the probative value of the evidence against its prejudicial effect. *See State v. Fowler*, 225 Or App 187, 193-94, 200 P3d 591 (2009) (stating that the constitutional issue "reduces to a weighing of the state's interest in excluding the defendant's evidence against the value of that evidence to the defense" (internal quotation marks and citation

omitted)).[9] We have refused to exercise our discretion to affirm on an alternative basis where the trial court failed to undertake an "innately discretionary" balancing of the evidence's probative value against its prejudicial effect. *State v. Cervantes*, 271 Or App 234, 244, 351 P3d 761 (2015). In addition, this is not a circumstance where we can say on the current record that the trial court would have had to exercise its discretion to exclude the evidence and, therefore, any error in excluding the evidence at any earlier point in the OEC 412 analysis was necessarily harmless. *See State v. Cave*, 298 Or App 30, 43, 445 P3d 364 (2019) (concluding that the failure to conduct discretionary balancing under OEC 403 was not harmless where the trial court could have permissibly exercised its discretion to admit or exclude the evidence). We do not, therefore, reach the state's alternative basis for affirmance.

We turn to the state's second argument that the error was harmless. Unlike its first argument, its second is a traditional harmless-error argument. The state contends that, even if the evidence had been admitted, that evidence would have had little likelihood of affecting the verdict. The state contends that any error in excluding the evidence was harmless, because "testimony from defendant that he and the victim had an additional bizarre sexual encounter [previously] did not make his story any more believable and thus was unlikely to have swayed the jury's determination that he was not credible." The state also contends that there was "overwhelming evidence of guilt in this case," including evidence that defendant initially denied to the police and a prosecutor that he had engaged in any sexual activity with A or even been near her apartment before later admitting to sexual contact with A after the police discovered DNA evidence. There was also the evidence that defendant had climbed up a downspout to reach A's balcony, conduct that a factfinder could easily find bizarre, at a minimum. At the OEC 412 hearing, defendant offered testimony that the

_____

[9] As noted, defendant also argued that the trial court should have admitted his testimony regarding past consensual sexual conduct with A to show A's bias and motive to lie to hide their purported sexual relationship from her boyfriend. Assuming that the court had accepted that premise, it would have then had to weigh whether the probative value of that evidence outweighed the danger of unfair prejudice under OEC 412.

prior consensual sexual encounter, which the state deems equally bizarre, occurred when he grabbed A by the hand in the hallway outside his apartment and they kissed before moving into his apartment to have sex.

Under the harmless-error doctrine, we will affirm despite the error if "there is little likelihood that a particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (internal quotation marks, brackets, and ellipses omitted); *see also* OEC 103 (stating that evidential error is not presumed prejudicial and error may not be predicated upon a ruling to admit or exclude evidence unless a substantial right has been affected). When deciding whether there was harmless error, we review all pertinent portions of the record. *State v. Goff*, 258 Or App 757, 765, 311 P3d 916 (2013).

We consider the role that the erroneously excluded evidence played in defendant's theory of the case. *State v. Hren*, 237 Or App 605, 609, 241 P3d 1168 (2010). At trial, defendant's theory of the case was that he and A had been flirting in the apartment complex prior to the charged conduct, he had engaged in consensual sexual contact with A after climbing onto her balcony and entering her apartment on the morning in question, and A had lied about an attempted rape to protect her exclusive relationship with her boyfriend. In closing, defense counsel acknowledged that defendant knew that it was "unconventional" and "odd" that he had climbed onto A's balcony, but he had done so because he had "gotten some signals from her that she was as interested in him as he was in her." Defendant had hoped to offer evidence of a prior consensual sexual encounter within a week of the incident that led to the sexual assault charges. On appeal, defendant contends that evidence of a close-in-time prior consensual encounter was offered for three purposes: (1) to support his contention that the charged conduct was actually consensual; (2) to impeach A's testimony that they were essentially strangers before the incident; and (3) to support his theory that A fabricated the assault to protect her relationship with her boyfriend.

We do not address all of defendant's reasons for his offer of testimony of a claimed prior consensual sexual

encounter with A. We question whether defendant would be able to offer evidence of that claimed prior consensual encounter to prove that the conduct that led to the charged sexual abuse and unlawful sexual penetration charges was also consensual. *See State v. Morgan*, 66 Or App 675, 678, 675 P2d 513 (1984) (stating that, "[w]hile the fact that defendant and complainant may have had sexual intercourse on other occasions does not show consent on the occasion in question," the evidence was admissible to show foundation for bias based on the defendant's theory that complainant falsely accused the defendant after learning that the defendant had spent the night with a mutual friend). However, we do not need to address that issue. We focus on defendant's theory that evidence of a prior consensual sexual encounter with A would have demonstrated that he was not a stranger to A and impeached A's testimony that they were essentially strangers. The state claims that that testimony was "bizarre" and would not have bolstered defendant's credibility regarding the conduct that led to the charges.

We acknowledge that a jury may well not believe any of defendant's proffered testimony regarding defendant's claimed prior consensual encounter with A, as the trial court did not. But the state's request, which calls for us to consider the "overwhelming" evidence of guilt and balance it against the probative value and credibility of defendant's proffered testimony, invites us to reweigh the evidence. That is not our task when we conduct a harmless-error analysis. In conducting that analysis, "we focus on 'the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.'" *State v. Scott*, 265 Or App 542, 549, 335 P3d 1283 (2014) (quoting *Davis*, 336 Or at 32). In other words, we do not usurp the role of the factfinder and determine if defendant is guilty or reweigh the evidence. *Scott*, 265 Or App at 549. Rather, if there is any evidence to support defendant's theory, we accept that evidence and consider whether that evidence would still have had little likelihood of affecting the verdict. *Id*.

Accepting, as we must for purposes of our harmless-error analysis, that a factfinder could believe that defendant

and A had a prior consensual sexual encounter within a week of the charged conduct, we cannot conclude that there is little likelihood that that evidence would have affected the verdict. Defendant would have had qualitatively different evidence of a prior relationship with A that would have provided at least some context for his version of the facts that he climbed into A's apartment on the night in question without any intention to assault her. Had defendant been able to present evidence of a prior sexual relationship, that evidence may have provided a substantially different context for defendant's actions, even accepting that a factfinder may find them strange or ultimately not believable. If admitted and accepted by a factfinder, defendant's testimony that he had previously had consensual sexual relations with A in his apartment might have given the jury a different perspective on defendant's intent and what happened when he climbed into A's apartment less than a week later.[10]

We conclude that the trial court's exclusion of the evidence was not harmless because we cannot determine that, if the evidence had been admitted, it would have had little likelihood of affecting the verdict.

### III.   CONCLUSION

Finally, we address the issue of the appropriate scope of remand for this case. As noted, the trial court recognized that, had it credited defendant's testimony, the court would have had to make additional determinations on the OEC 412 issues and engage in an analysis that would likely require it to weigh the probative value of the evidence against other considerations, such as prejudice, confusion of the issues, and potential harassment of the witness on an issue. In somewhat similar circumstances, where a trial court has failed to engage in proper discretionary balancing under OEC 403, the Supreme Court has remanded the issue to the trial court to determine whether, after conducting a correct analysis, including a weighing of the appropriate factors, "a new trial [is] necessary or appropriate." *State v.*

---

[10] We note here again that we are not concluding that the trial court may not have an independent basis to exclude the evidence. We are merely concluding that, if the evidence had been admitted, we cannot conclude it would have had little likelihood of affecting the verdict.

*Baughman*, 361 Or 386, 410, 393 P3d 1132 2017 (remanding case to trial court to conduct an analysis under OEC 404 and balancing under OEC 403 to determine whether to admit evidence of the defendant's prior uncharged conduct). We have done the same where we cannot conclude, as here, that the trial court would have had to exercise its discretion under OEC 403 to exclude the evidence. *State v. Holt*, 292 Or App 826, 835, 426 P3d 198 (2018) (concluding that the trial court would not have had to exclude the evidence under OEC 403 and remanding to the trial court to conduct the limited remand described in *Baughman*). We therefore remand this case to the trial court for further proceedings under OEC 412 and for the court to reach issues that it did not reach in the initial OEC 412 hearing. The trial court will then be in a position to determine whether a new trial is "necessary or appropriate." *Baughman*, 361 Or at 410.

Reversed and remanded.